1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Benjamin Lloyd Johnson,**<br>Petitioner<br>-vs-<br>**Ivan Bartos, et al.,**<br>Respondents | CV-08-2167-PHX-MHM (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed through counsel a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 24, 2008 (Doc. 1). On May 12, 2009 Respondents filed their Response (Answer) (Doc. 13). Petitioner filed a Traverse (Reply) on July 10, 2009 (Doc. 17), and a Submission on April 6, 2010. Respondents filed a Supplemental Response (Doc. 20) on April 20, 2010..

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's first direct appeal, the Arizona Court of Appeals summarized the underlying facts as follows:

> Phoenix police officers Jeffrey Dauer and Robert Handy made a traffic stop in a residential Phoenix neighborhood during the evening of November 12, 1994. Onlookers from a nearby house gathered as the

> officers were speaking with the occupants of the automobile. Both the onlookers and the occupants of the vehicle were being cooperative. Without warning, defendant -- who was in a residential yard approximately 325 feet down the street -- fired a shot from his scoped, 30.06 caliber rifle, striking Officer Dauer in the back of his left leg and inflicting serious, permanent injuries.

(Pet. Exhibit A, Mem. Dec. at 2.)  (Exhibits to the Petition (Doc. 1) are referenced herein as "Pet. Exhibit ___; Exhibits to the Answer (Doc. 13) are referenced herein as "Resp. Exhibit ___.)

## B. PROCEEDINGS ON FIRST TRIAL

Petitioner was indicted on: (1)  one count of attempted murder as to Officer Dauer, (2 and 3) two counts of aggravated assault related to the two police officers, (4 thru 9) 6 counts of aggravated assault with regard to bystanders, and (10) one count of criminal trespass. Allegations were included that the offenses constituted a "dangerous felony," calling for increased punishment. (Pet. Exhibit A, Mem. Dec. at 3, 17; Resp. Exhibit E, Indictment.)

Petitioner proceeded to trial.

**Jury Instructions** -

General Instruction on Intent - The trial court issued Recommended Arizona Jury Instruction (RAJI) criminal instruction 1.056(a)(1) to the jury, which provided:

> "Intentionally" or "with intent to" as used in these instructions means that a defendant's objective is to cause that result or to engage in that conduct.

(Pet. Exhibit A, Mem. Dec. at 17; Resp. Exhibit F, R.T. 9/25/96 at 82.)

Intent on Dangerous Offense - The Court provided an overarching instruction as to the findings required to determine "whether or not the offense was a dangerous offense." (*Id.* at 84.)

> An offense is a dangerous offense if it involved the intentional or knowing infliction of serious physical injury or the use or exhibit of a deadly weapon or dangerous instrument.

(*Id.*)

Count 3 Aggravated Assault on Officer - As to Count 3, the court instructed:

> The crime of Aggravated Assault as to Count 3 - - that's the count involving Sergeant Handy as the victim - - requires proof of the following two things:
> 1. The defendant committed an assault, which requires proof that:
> The defendant intentionally put another person, **that the defendant knew or had reason to know was a police officer**, in reasonable apprehension of immediate physical injury: and
> 1. The assault was aggravated by the following factor:
> The defendant used a deadly weapon.

(*Id.* at 85 (emphasis added).)

Counts 4 thru 9 Aggravated Assault on Bystanders - As to Counts 4 through 9, the court instructed:

> The crime of Aggravated Assault as to Counts 4 through 9 requires proof of the following two things:
> 1. The defendant committed an assault, which requires proof that:
> The defendant intentionally put another person in reasonable apprehension of immediate physical injury; and
> 2. The assault was aggravated by the following factor:
> The defendant used a deadly weapon.

(*Id.* at 86.) Thus the only distinction between Counts 3 and 4 through 9 was the additional requirement with regard to Count 3 that the defendant have knowledge that the victim was a police officer.

Jury Question and Response - During deliberations, the jury presented a note to the trial court stating:

> We are confused on the word intentionally as it refers to counts 4 through 9 - - is intent to use a weapon the same as intent to do bodily harm. Please expand on Doc. 3 of page 3.

(Pet. Exhibit A, Mem. Dec. at 18)   The jury's page number reference was to the general definition of "intentionally."  (*Id.*)  The trial court responded, over Petitioner's objection, with a note stating:

> intentionally means to do the act that you do

1   (*Id.* (emphasis in original).) [1]

2       **Result** - The trespass count was dismissed at trial, and Petitioner was convicted on

3   all remaining counts. (*Id.* at 3.)   Petitioner was sentenced to an aggregate term of 132 years

4   in prison, including consecutive 21 year sentences as to Counts 2 and 3(the assaults on the

5   two officers).  (*Id.* at n. 4.)

6

7   **C.  PROCEEDINGS ON FIRST DIRECT APPEAL**

8       Petitioner filed a direct appeal arguing *inter alia* that "the trial court committed

9   reversible error by incorrectly defining "intentionally" in response to a jury question". (Pet.

10  Exhibit A, Mem. Dec. at 4.)    Petitioner argued that all convictions should be reversed on

11  the basis of the error.  The Arizona Court of Appeals held, *inter alia,* that the trial court's

12  response to the jury's note was erroneous under state law as to the aggravated assault counts

13  because state law required " a defendant must intend both conduct (using a deadly weapon

14  or dangerous instrument) *and* a result (placing another person in reasonable apprehension of

15  imminent physical injury)."  (*Id.* at 19.)  The appellate court found that the trial court's

16  instruction resulted in permitting the jury "to apply the intent element only to the conduct,

17  i.e., the firing of the rifle or 'the act that you do.'" (*Id.*)  On this basis, the appellate court

18  reversed Petitioner's convictions on Counts 4 through 9.

19      The appellate court rejected Petitioner's claim that the erroneous instruction also

20  corrupted the verdict on the other counts, arguing that they all required proof of intent to

21  cause a specific result.  The appellate court noted that the jury's question was specifically

22  limited to Counts 4 through 9, and found that there was "nothing in the record to suggest that

23  the jury was confused as to the intent element of Counts I through III, and there is no reason

24  to assume that the court's response affected the verdicts on those counts."  (*Id.* at 20.)

25

26      [1] In chambers, the trial court evidenced an intent to provide a broader response: "My

27  answer to this question would be that intentionally means intent to do the act that you do,
    because that's the intent that the statute refers to.  It's not to cause a particular result to

28  occur."  (Resp. Exhibit F, R.T. 9/25/96 at 91-92.)

Ultimately, the appellate court reversed Petitioner's convictions on all but the two counts of aggravated assault related to the two police officers, and modified the sentencing minute entry, but not the actual sentence,  on those counts.  (*Id.* at 24.)  Thus, at the conclusion of these proceedings, Petitioner stood sentenced on two, consecutive, 21 year sentences.

Petitioner then sought review by the Arizona Supreme Court, which denied review. (Pet. Exhibit B, Docket.)

**D.  PROCEEDINGS ON SECOND TRIAL**

On remand, the state dismissed the attempted murder charge, and Petitioner again proceeded to trial on the aggravated assault charges related to the bystanders, and was convicted on 5 of the 6 counts.  (Pet. Exhibit C, Mem. Dec. 6/17/03 at  1-2.)

**E.  PROCEEDINGS ON SECOND DIRECT APPEAL**

Petitioner filed a direct appeal challenging his convictions as to the bystanders.  The Arizona Court of Appeals reversed his convictions, finding that the trial court improperly instructed the jury that they could transfer Petitioner's intent to harm the police officers to the bystanders, in order to find the elements of aggravated assault.  (*Id.* at 18-19.)

**F.  PROCEEDINGS ON THIRD TRIAL**

Petitioner then proceeded again to trial on the five counts of aggravated assault for which he had been convicted in his second trial.

**Evidence** - The Arizona Court of Appeals summarized evidence related to Petitioner's gang involvement:

> The trial court admitted evidence of membership in gang enforcement units or task forces of the two Phoenix Police detectives who conducted the, traffic stop' where the shooting occurred, and the Phoenix detective and the Department of Public Safety ("DPS") detective, who arrested [Petitioner]. The trial court, also allowed testimony from the three Phoenix detectives (the two who conducted the traffic stop, and one of the arresting officers) that they had encountered [Petitioner] in the past

and that [Petitioner] had not fled from them on those occasions.

(Pet. Exhibit D, Mem. Dec. 2/22/05 at 4.)  Petitioner had objected to this testimony "on the ground that such testimony unfairly prejudiced him by suggesting that he was a gang member." (*Id.* at 3.)

**Jury Instructions** - In disposing of Petitioner's PCR petition, the trial court summarized events at the third trial concerning the instruction on transferred intent:

> In the present case, when Defendant's attorney expressed concern about this Court's transferred intent instruction, this Court suggested that he provide this Court with a proposed instruction. The next day, Defendant's attorney conceded that he was unable to do so:
>
> > DEFENSE COUNSEL: I noted on the record yesterday that I think it's-that there should be further clarification to describe the scenario discussed by the Court of Appeals in which intent could not transfer to Mr. Johnson, which is a situation where he intended to injure Detective Dauer and had no other intent to place anyone in reasonable apprehension of imminent physical injury. I drafted a number of different versions of the instructions. And, frankly, I came up with the same scenario that the court surmised yesterday. I don't think there is a way to do that without creating more problems than it solves.... I can't come up with anything that doesn't create more confusion and more potential to mislead the jury than the court has presented.

(Pet. Exhibit F, Order 6/21/06 at 1-2 (quoting R.T. 11/26/03, at 19-20).)  The trial court ultimately instructed the jury:

> The crime of Aggravated Assault requires proof of the following three things: (I) The defendant's actions placed a person in reasonable apprehension of imminent physical injury; and (2) the defendant intended to place that person in reasonable apprehension of imminent physical injury, and (3) the defendant used a deadly weapon.
>
> * * *
>
> Intended to place a certain person in reasonable apprehension of imminent physical injury is an element of the offense of each separate count. If the defendant placed a certain person in reasonable apprehension of imminent physical injury, but the defendant did not intend to place that certain person in reasonable apprehension of imminent physical injury, the element of intended to place that certain person in reasonable apprehension of imminent physical injury is established if (I) the defendant's actions also placed a different person in reasonable apprehension of imminent physical injury, and (2) the defendant intended to place that different person in reasonable apprehension of imminent physical injury.

(*Id.* at 3.)

**Result** - Petitioner was again convicted on the five counts of aggravated assault. (Pet.

Exhibit D, Mem. Dec. 2/22/05 at 1.)

As a result of his convictions, Petitioner is serving consecutive 21 years sentences on Counts 2 and 3 from the first trial, and consecutive 15 years sentences on the five bystander assault counts from his third trial (a total of 75 years), for an aggregate of 117  years. (Petition, Doc. 1 at 6; Answer, Doc. 13 at 3.)

## G.  PROCEEDINGS ON THIRD DIRECT APPEAL

Petitioner then appealed his convictions from the third trial, challenging the admission of the gang related evidence pursuant to Arizona Rule of Evidence 403. (Resp. Exhibit C, Opening Brief.)   The Arizona Court of Appeals denied the appeal, finding that the evidence was relevant and not unfairly prejudicial.  (Pet. Exhibit D, Mem. Dec. 2/22/05 at 5-6, 10.)

Petitioner then sought review by the Arizona Supreme Court (Resp. Exhibit D, Pet.Rev.), arguing *inter alia* that the admission of the gang related evidence violated his right to due process under the 14th Amendment to the United States Constitution.  (Resp. Exhibit D, Pet. Rev. At 10-11.)  That petition was summarily denied (Pet. Exhibit E, Order 8/3/5).

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner then filed a Notice of Post-Conviction Relief (Resp. Exhibit A), and a PCR Petition (Resp. Exhibit B), arguing that appellate counsel in the third direct appeal had been ineffective for failing to challenge the transferred intent instruction, and that the instruction was erroneous.

The trial court rejected Petitioner's claim on the instruction, finding that the failure to proffer an alternative instruction limited review of the instructional error to a fundamental error review, that there was no fundamental error from the instruction. The trial court also found that the instructional error claim was precluded for failure to raise it on direct appeal. (Resp. Exhibit B, order 6/21/6  at 2.)

The trial court also rejected the ineffective assistance claim, finding that appellate

1   counsel could have a made a reasonable tactical judgment to not pursue the instructional

2   error, and that there was no prejudice because the instruction given was correct.  (*Id.* at 3-4.)

3        Petitioner then sought review by the Arizona Court of Appeals, who summarily denied

4   review.  (Pet. Exhibit G, Order 7/12/7.)  He also sought review by the Arizona Supreme

5   Court, which was also summarily denied.  (Pet. Exhibit H, Order 12/17/07.)

6

7   **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

8        **Petition** - Petitioner commenced the current case by filing his Petition for Writ of

9   Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 24, 2008 (Doc. 1).  Petitioner's

10  Petition asserts the following three grounds for relief:

11          (1) "Petitioner was denied his constitutional right to due process
            of law under the Fifth and Fourteenth Amendments to the United States
12          Constitution when the trial court erroneously instructed the jury on the
            mental element of aggravated assault, requiring that [P]etitioner's
13          21-year prison sentence on Count Three, imposed on December 6,
            1996, be vacated";
14          (2) "Petitioner's appellate counsel was constitutionally
            ineffective under the Sixth Amendment of the United States
15          Constitution for failing to challenge a flawed transferred interest
            instruction on appeal when the error had been preserved at trial,
16          requiring that the five consecutive sentences for aggravated assault
            imposed on December 19, 2003, be vacated"; and
17          (3) "Petitioner was denied due process of law when the trial
            court admitted, at [P]etitioner's third trial, prejudicial and irrelevant
18          evidence against him, consisting of [P]etitioner's prior contacts with the
            Phoenix Police Department's Gang Task Force."
19
    (Order 12/8/8 Doc. 5 at 2 (quoting Petition, Doc. 1).)
20
         **Response** - On May 12, 2009, Respondents filed their Answer (Doc. 13).
21
    Respondents contend that the petition is timely, but that the Third Ground for relief is
22
    unexhausted and procedurally defaulted.  (*Id.* at 4-10.)  Respondents argue the remaining
23
    claims are without merit.  (*Id.* at 10-17.)
24
         **Reply** - On July 10, 2009, Petitioner filed a Traverse (Doc. 17 ).  Petitioner argues that
25
    his Ground Three was fairly presented to the Arizona Court of Appeals and Arizona Supreme
26
    Court in his third direct appeal.  (*Id.* at 18-22.)  He argues the merits of all three claims.
27
         **Supplements** - On March 25, 2010, the parties were directed to supplement the record
28

to include portions of the transcript and jury instructions relevant to Ground 1 of the Petition. On April 6, 2010, Petitioner filed his Submission (Doc. 19), including as exhibits portions of the transcript. On April 20, 2010, Respondents filed their Response (Doc. 20), referencing the transcript attached as Exhibit F to the Answer (Doc. 13).

## III. APPLICATION OF LAW TO FACTS

### A.  GROUND ONE: DUE PROCESS - JURY INSTRUCTION

For his Ground One, Petitioner argues that he was denied his constitutional right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court erroneously instructed the jury on the mental element of aggravated assault, requiring that Petitioner's 21-year prison sentence on Count Three, imposed on December 6, 1996, be vacated.

Respondents argue that the Arizona Court of Appeals' finding that the trial court's response to the jury's question as to Counts 4 to 9 did not affect Count Three is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). (Answer, Doc. 13 at 12-13.) Respondents further argue that the factual distinctions between Count 3 (aggravated assault on police officer adjacent to officer shot) and Counts 4 though 9 (aggravated assault on bystanders),  provided the jury a sufficient basis to find the requisite intent to harm the other officers, and thus reflected that their concerns (and thus the Court's response) were limited to the bystander counts. (*Id.* at 13-14.)   Respondents also argue that the trial court's original instructions on "reasonable apprehension" were correct and would have cured any misdirection.  (*Id.* at 14.)

Petitioner replies that the facts were not sufficiently distinguishable to provide a basis to find that the jury's deliberations on Count Three were not affected by the erroneous instruction. (Traverse, Doc. 17 at 6-7.)  Petitioner further argues that it is the trial court's response, not the jury's question which provides the proper focus in ascertaining whether the jury was misled by the instruction, and attempting to distinguish based on the status as a police officer of the victim in Count Three is simply speculation as to what the jury may have

done.  (*I.d* at 7.)   Petitioner further argues that the presumption should be that the jury followed the Court's final instruction on the requisite intent, which was the erroneous one. (*Id.* at 8-9.)

**Nature of State Court's Determination** - Respondents cast as a factual finding the state appellate court's determination that the jury's verdict on Count Three was not affected by the erroneous instruction.[2] (Answer, Doc. 13 at 12-13.)

However, harmlessness is not a factual question.  Rather, the determination whether an instructional error "was merely harmless error or an impermissible violation of due process is a mixed question of law and fact not controlled by section 2254(d). Only the facts which underlie this ultimate conclusion are governed by the statutory presumption." *Hunt v. State of Oklahoma,* 683 F.2d 1305, 1309 (10th Cir. 1982). *See Herd v. Kinchloe*, 800 F.2d 1526, 1528 (9th Cir. 1986) (harmlessness of instructional error "is a mixed question of law and fact"); *Ghent v. Woodford*, 279 F.3d 1121, 1126 (9th Cir. 2002) ("determination of whether an error was harmless is a mixed question of law and fact").

However, to the extent that the state court made findings of historical fact in the course of reaching its harmlessness conclusion, those findings are entitled to a presumption of correctness.  *See Marino v. Vasquez*, 812 F.2d 499, 504 (1987).

**Limitation on Habeas Relief** - "A federal court may grant a writ of habeas corpus based on a claim adjudicated by a state court if the state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'  28 U.S.C. § 2254(d)(1). A state court's decision is 'contrary to ... clearly established Federal law' 'if the state court applies a rule that contradicts the governing law set forth in our cases,' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

---

[2]  The Arizona Court of Appeals harmlessness decision extended to Counts I and II, the charges for attempted murder and aggravated assault on the officer struck by the bullet. (Pet. Exhibit A, Mem. Dec. 12/7/98 at 20.) The conviction on Count I was  vacated on other grounds.  (*Id.* at 24.)  The conviction on Count II was sustained, but Petitioner's challenge in Ground One is explicitly limited to Count III.  (Petition, Doc. 1 at 4, n.1, and 22.)

result opposite to ours.'" *Bell v. Cone,* 543 U.S. 447, 452-453 (2005) (citations omitted).

**Appropriate Standard** - "It is a violation of due process for a jury instruction to omit an element of the crime." *Evanchyk v. Stewart* , 340 F.3d 933, 939 (9th Cir. 2003).  A judge's response to a mid-deliberation inquiry is treated as a jury instruction.  *Belmontes v. Woodford*, 350 F.3d 861, 900, n. 16 (9th Cir. 2003), *rev'd on other grounds Brown v. Belmontes*, 544 U.S. 945 (2005).

Harmlessness on Direct Review - When a jury has been incorrectly instructed in a way that relieves the prosecution of its burden of proof on an element of the crime, the error is subject to a harmless error analysis.  A reviewing appellate court is obligated to reverse unless "the facts found by the jury were such that it is clear beyond a reasonable doubt that if the jury had never heard the impermissible instruction its verdict would have been the same." *Pope v. Illinois*, 481 U.S. 497, 503, n..6  (1987).[3]

In reviewing for harmlessness, the reviewing court need not conclude that the jury did not have the impermissible instruction "in mind" when they determined guilt, nor need the court "retrace the jury's deliberative processes." *Id.*  However, if after reviewing the record, "the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error--for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding--it should not find the error harmless." *Neder v. U.S.*, 527 U.S. 1, 19 (1999).

In reviewing for harmlessness on direct review, the court must presume that the error resulted in harm, and place the burden on the prosecution and not on the defendant, in addressing the issue.

---

[3]  The same is not true of instructions which do not pertain to an individual element of an offense but to the prosecution's burden of proof beyond a reasonable doubt as a whole. In such an instance, the defective instruction leaves nothing for the reviewing court to evaluate, but "vitiates all the jury's findings." *Neder,* 527 U.S. at 19 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)).  Thus, such errors are deemed structural and are not subject to harmless error analysis.  *Id.*  Here, however, the erroneous instruction simply affected the required proof on the element of intent.  Accordingly, only harmful error required reversal.

. . . the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment . . . the beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We[hold] that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Chapman v. California*, 386 U.S. 18, 24 (1967). *See also Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993) ("The State bears the burden of proving that an error passes muster under [the *Chapman*] standard.").

<u>Harmlessness on Habeas</u> - However, in the context of collateral review (e.g. by a habeas court), as opposed to direct review on appeal, the presumption no longer applies.  In such collateral review,  to determine whether a state court error was harmless, the presumption is in favor of the judgment and must be overcome by a showing that, in light of the record as a whole, the error has a "substantial and injurious effect" on the verdict. *Brecht*, 507 U.S. at 623.  Under this more stringent standard, petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637.

When reviewing a harmlessness decision, under the limitations on habeas relief in 28 U.S.C. § 2254(d)(1), a habeas court must first find that the state court applied an incorrect harmlessness standard, or applied the *Chapman* standard unreasonably.  However, even after making such a determination, the habeas court must still evaluate whether the error meets the more rigorous harmlessness standard under *Brecht*.  *Medina v. Horning*, 386 F.3d 872, 876 (9th Cir. 2004).  (For a discussion of the alternative approaches utilized among the circuits in coordinating *Chapman* and *Brecht*, *see Gutierrez v. McGinnis*, 389 F.3d 300, 304, n.3 (2nd Cir. 2004).)  In the habeas context, an instruction is harmful, and a petitioner has met his burden of proving actual prejudice, if he shows that the erroneous instruction "'had a substantial and injurious effect or influence in determining the jury's verdict.'"  *Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006) (quoting  *Brecht*, 532 U.S at 637).

In making that determination, however, the habeas court does not apply any

- 12 -

presumption for or against harmlessness (as opposed to the presumption in favor of the state court's judgment).  Rather, the habeas judge must answer whether "I, the judge think that the error substantially influenced the jury's decision."  *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995). "It must do so without benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial." *Id.* (quoting R. Traynor, *The Riddle of Harmless Error* 26 (1970)).

**State Court Decision Contrary to Federal Law** - Here, the Arizona Court of Appeals concluded that the trial court's response to the jury's question resulted in an erroneous instruction.  That determination is  a matter of state law and is unassailable in this proceeding.  However, the Arizona Court of Appeals failed to apply the presumption in favor of the defendant in determining the harmlessness of that error as it related to Count Three, as mandated by *Chapman*.  *See Brecht v. Abrahamson*, 507 U.S. at 630.  The Arizona Court of Appeals neither acknowledged nor applied the *Chapman* presumption.

It is true that "Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone,* 543 U.S. 447, 455 (2005). *See also Early v. Packer*, 537 U.S. 3, 8 (2002) (§2254(d)(1) "does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them").  Indeed, so long as an equivalent state standard is applied in finding harmlessness, the Constitution will be satisfied.  *Medina v. Horning,* 386 F.3d 872, 878 (9th Cir. 2004) *(*"The California Court of Appeal's harmless error determination in this case was not "contrary to" established federal law. Although the Court of Appeal did not identify *Chapman* as the guiding point of its harmless error analysis, it applied a state-law "harmless beyond a reasonable doubt" standard that comports with federal law.").

Here, however, the Arizona court did not merely fail to acknowledge *Chapman*, or to expressly apply its standard.  Nor did it apply a comparable state standard.  Instead, it applied an antithetical presumption that the error was harmless and rejected the claim when Petitioner failed to prove to the contrary:

> There is nothing in the record to suggest that the jury was confused as to the intent element of Counts I through III, and there is no reason to assume that the court's response affected the verdicts on those counts.

(Pet. Exhibit A, Mem. Dec. at 20.)[4]  Rather than being free to simply find "no reason to assume" a harmful effect, the state court was required to assume that it was harmful, and to look to the prosecution to establish otherwise.  By failing to do so, "the state court applie[d] a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Bell,* 543 U.S. at 452-453.  *Cf. Samuel v. U.S.,* 169 F.2d 787, 794 (C.A.9 1948) (a pre-*Chapman* case) ("We are not at liberty to assume that the instruction as given was favorable to appellants and, therefore, nonprejudicial.").

**Harmfulness of Instructional Error** - However, as discussed above, Petitioner is not entitled to habeas relief merely because the decision of the state court was erroneous.  That is so even if that error rises to the level mandated by 28 U.S.C. § 2254(d)(1).  To the contrary, in this habeas proceeding, Petitioner is not entitled to relief unless this Court is convinced, or is at least in grave doubt, that the error was indeed harmful.

State Court Findings - In discussing the harmfulness of the instruction, the Arizona Court of Appeals reached several conclusions on state law and made several  findings of historical fact which are binding on this Court, including:

1.    All of the charges against Petitioner required proof of intent not only to perform the act, but intent to cause a specific result.  (Pet. Exhibit A, Mem. Dec. at 20.)

2.    The jury's note did not refer to Count Three, but referred to Counts 4 through

---

[4]  There is nothing in the Arizona Court of Appeals' decision which would suggest that they implicitly applied the *Chapman* standard.  Although that court vacated the conviction on the other assault charges based on the instruction error, the court did not reference nor explicitly apply any harmlessness standard in doing so.  (*See* Pet. Exhibit A, Mem. Dec. 12/7/98 at 17-20.)  Likewise, in vacating the attempted murder conviction based on an erroneous instruction, the court did not rely upon any harmlessness standard, but instead relied on a "fundamental error" standard because of Petitioner's failure to object at trial.  (*Id.* at 14.)  Even if this were the equivalent of the *Chapman* standard, the court would not have had reason to apply it to the intent instruction, to which Petitioner objected at trial.

1      9.  (*Id.* at 18, 20.)

2      3.      The note went on to ask the trial court if "intent to use a weapon [is] the same

3              as intent to do bodily harm," and then asked the court to expand on the general

4              definition of "intentionally".  (*Id.* at 18.)

5      3.      The trial court's response was not limited to any specific counts, but simply

6              directed that "intentionally means intent to do the act that you do.".  (*Id.* at 18,

7              20.)

8      The Arizona court went on to opine that "there is nothing in the record to suggest that

9  the jury was confused as to the intent element of Counts I through III."  (*Id.* at 20.)  However,

10  that is not a factual finding, but a summary conclusion by the state court.[5]

11      Unified Intent Instruction - In instructing the jury, the trial court provided a general

12  instruction on intent (Resp. Exhibit F, R.T. 9/25/96 at 82), and an overarching instruction as

13  to the findings required to determine "whether or not the offense was a dangerous offense."

14  (*Id.* at 84.)  The only distinction in the specific instructions give on Counts 3 and 4 through

15  9 was the additional requirement with regard to Count 3 that the defendant have knowledge

16  that the victim was a police officer.  No separate or special instruction was given on Count

17  3 with regard to the intent to cause an apprehension of harm.

18      Jury Question Focused on Dangerousness Allegation - There was no reason for the

19  distinction between the counts expressed in the jury's question.

20          We are confused on the word <u>intentionally</u> as it refers to counts 4
            through 9 - - is intent to use a weapon the same as intent to do bodily
21          harm. Please expand on Doc. 3 of page 3.

22  (Pet. Exhibit A, Mem. Dec. at 18) Although the jury's question referenced Counts 4 through

23  9, they then asked two general questions about the meaning of "intentionally", including a

24  specific reference to the general definition of "intentionally" given by the court.[6]

25

26      [5] Even if this were a finding of historical fact, it would relate solely to the jury's state
    of mind prior to the erroneous instruction, and not after.

27

28      [6] The Arizona Court of Appeals referenced the limitation in the jury's question to find
    no error.  Had the state court's decision not been "contrary to" federal law, this Court would

1    The specific intent matters referenced did not correlate to the elements of Counts 4

2    through 9 (or Count 3). None of these counts mandated a finding of "intent to use a weapon"

3    or "to do bodily harm." Rather, the requisite intent on all of these counts was to "put another

4    person . . .in reasonable apprehension of immediate physical injury." On the other hand, the

5    dangerous offense designation required such a finding.[7] Thus, the substance of the jury's

6    question was not directed at specific elements unique to Counts 4 through 9, but evidenced

7    a misunderstanding as to the nature of the intent proof required under the dangerous offense

8    allegation.[8]

9    They concluded by focusing on the general instruction on "intentionally."

10   <u>Court Provided General Response</u> - The trial court responded, over Petitioner's

11   objection, with a note stating:

12       <u>intentionally</u> means to do the act that you do

13   (Pet. Exhibit A, Mem. Dec. at 18 (emphasis in original).) As the state court found, the

14

15

16   _____

17   be obligated to evaluate that decision under the "unreasonable application of " standard. *See*
     *Medina v. Horning*, 386 F.3d 872, 877-878 (9th Cir. 2004). The undersigned would still find

18   that a decision to rely upon the limited nature of the question, as opposed to the general
     nature of the trial court's response, was objectively unreasonable given: (1) the presumption

19   that the jury carefully applied the instructions actually given by the court, *see Richardson v.*

20   *Marsh*, 481 U.S. 200, 206 (1987); (2) the apparent actual intent of the jury to reference the
     dangerous offense instruction (*see* note 3, *infra*, and surrounding text); and (3) the

21   requirement that the prosecution show the error was "harmless beyond a reasonable doubt,"
     *Chapman,* 386 U.S. at 24.

22

23       [7] The Arizona Court of Appeals did not correlate the jury's note to the dangerous
     offense allegation, but focused instead upon the intent for the basic aggravated assault

24   conviction. (Pet. Exhibit A, Mem. Dec. at 20-21.)

25       [8] The focus on Counts 4 through 9 may have resulted from the a distinction between

26   bystanders and police officers. The jury may have been satisfied that Petitioner's
     overarching intent was to shoot at and either harm or scare away police officers, but that he

27   may have had no such intent with regard to bystanders. Thus, they would have been left to
     resolving whether the simple intent to use the gun was sufficient to eliminate the need to find

28   an intent to cause bodily harm.

1    judge's response was not limited to a specific count or issue. (*Id.*)[9]

2            Instead the trial court simply undertook to redefine "intentionally." Thus, through its

3    response, the trial court rewrote it's general definition of intent, which was applicable to all

4    counts, including Count 3.  No separate instruction on "intent" was given with regard to

5    either Count 3,  Counts 4 through 9, or the dangerous offense designation.    And, the

6    elements of proof of intent were the same between Count 3 and Counts 4 through 9 (with the

7    exception that Count 3 required proof of Petitioner's knowledge that the victim was a police

8    officer).  Thus, the jury would have had no basis to limit the trial court's response to Counts

9    4 through 9 (or even the dangerous offense designation).

10           "[It is] the almost invariable assumption of the law that jurors follow their

11   instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). "[We] presum[e] that jurors,

12   conscious of the gravity of their task, attend closely the particular language of the trial court's

13   instructions in a criminal case and strive to understand, make sense of, and follow the

14   instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324, n. 9  (1985).

15           Therefore, the trial court's erroneous rewriting of the general definition of intent

16   would have impaired the jury's determination on any count or charge which drew upon that

17   general definition.

18   Factual Distinctions in Count 3 - Nonetheless, Respondents argue that the factual

19   distinctions between Count 3 (aggravated assault on police officer adjacent to officer shot)

20   and Counts 4 though 9 (aggravated assault on bystanders),  provided the jury a sufficient

21   basis to find the requisite intent to harm the other officers, and thus reflected that their

22   concerns (and thus the Court's response) were limited to the bystander counts.  (Answer,

23   Doc. 13 at 13-14; Supplement, Doc. 20 at 3.)  While that may have provided a basis for the

24   jury's distinction in their question, it would not overcome the general nature of the trial

25

26           [9] The trial court's issuance of its general instruction despite trial counsel's objection
     that it eliminated that requisite intent such that "reckless would be all the requisite  state of
27   mind," (Resp. Exhibit F, R.T. 9/25/96 at 92), suggests that the trial court understood and
     intended that the response be read as a general refinement on the definition of intent, and not
28   limited to the dangerousness issue actually raised by the jury.

1   court's response.

2      Nor does the existence of sufficient evidence to support the conviction render the trial

3   court's elimination of an intent requirement harmless. *See U.S. v. Seymour,* 576 F.2d 1345,

4   1349 (9th Cir. 1978) ("the mere fact that the evidence was overwhelming is not a justification

5   for classifying the error as harmless, under the *Chapman* standard"). If the jury followed the

6   instructions they were left with, namely that "intentionally" related only to conduct and not

7   effect, then they could have convicted Petitioner without having to find any evidence of the

8   requisite intent to create an apprehension.

9      It is true that "where a reviewing court concludes beyond a reasonable doubt that the

10  omitted element was uncontested and supported by overwhelming evidence, such that the

11  jury verdict would have been the same absent the error, the erroneous instruction is properly

12  found to be harmless." *Neder v. U.S.* 527 U.S. 1, 17 (1999). Here, however, the existence

13  of intent was contested (*see* Resp. Exhibit F, R.T. 9/25/96 at 33), and the only evidence of

14  such intent was the implication from Petitioner having fired the gun (*see* Pet. Exhibit A,

15  Mem. Dec. 12/7/98 at 22).

16      We are not authorized to look at the printed record, resolve conflicting
        evidence, and reach the conclusion that the error was harmless because
17      we think the defendant was guilty. That would be to substitute our
        judgment for that of the jury and, under our system of justice, juries
18      alone have been entrusted with that responsibility.

19  *Weiler v. U. S.,* 323 U.S. 606, 611 (1945).

20      <u>Instructions as a Whole</u> - Respondents also argue that the "trial court's final

21  instructions to the jury on the 'reasonable apprehension of ' harm theory of aggravated

22  assault were correct." (Answer, Doc. 13 at 14.)   Indeed, this Court is obligated to examine

23  the instructions as a whole, and not in isolation. "It is well established that the instruction

24  'may not be judged in artificial isolation,' but must be considered in the context of the

25  instructions as a whole and the trial record." *Estelle v. McGuire*, 502 u.S. 62, 72 (1991)

26  (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

27      Presumably Respondents reference the jury instructions given immediately prior to

28  commencing deliberations. Those were not, however, the court's truly "final instructions."

Rather, the last instruction given was the erroneous instruction on the meaning of "intentionally," which contradicted the prior proper definition.

To the extent that last instruction conflicted with those given earlier, the jury could be expected to give greater weight to the latter instruction. "Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge." *Bollenbach v. U.S.,* 326 U.S. 607, 612 (1946).

<u>Defense Theory</u> - Finally, Respondents argue that any error was irrelevant because Petitioner's defense at trial was that he was not the shooter. To the contrary, Petitioner specifically argued that there was a failure to establish intent on the aggravated assault charges. Petitioner argued that the asserted intent to shoot Detective Dauer precluded an intent to cause "reasonable apprehension of physical injury" in Officer Handy and the other victims in the aggravated assault counts. "You can't have it both ways." (Resp. Exhibit F, R.T. 9/25/96 at 33.)[10]

In contrast, in arguing on Counts 3, and 4 through 9, the prosecution offered no argument of evidence on the state of mind of Petitioner. With regard to Count 3, the prosecution instead focused on the state of mind and the reaction of the victim, officer Handy. (Resp. Exhibit F, R.T. 9/25/96 at 10-11.) With regard to Counts 4 through 9, the prosecution again focused on whether it was "reasonable for them to feel threatened." (*Id.* at 11.) Thus, the prosecution's arguments, if accepted, effectively vitiated any requirement of Petitioner's intent to cause apprehension, and would have made the occurrence of that apprehension sufficient. In essence, the prosecution's argument was in line with the erroneous instruction that intent "to do that act that you do" is sufficient. *See Boyde v.*

---

[10] A similar distinction in the intent underlying the various charges was recognized by the Arizona Court of Appeals in Petitioner's  appeal from his second trial, when they observed that "[b]ased on the instructions given and the verdicts rendered, we cannot determine whether the jury found that (1) Johnson intended only to frighten the officers or others at the scene or (2) Johnson intended both to shoot a person *and*  to frighten one or more of the people present or (3) Johnson intended only to shoot a person and not to scare anyone." (Pet. Exhibit C, Mem. Dec. 6/17/03 at 11-12.)

*California*, 494 U.S. 370, 384-385 (1990) (discussing propriety of considering prosecutorial arguments in determining effect of jury instructions).

Evidence - The jury was faced with evidence that Petitioner fired one shot and struck one police officer.

> Without warning, defendant - - who was in a residential yard approximately 325 feet down the street - - fired a shot from his scoped, 30.06 caliber rifle, striking Officer Dauer in the back of his left leg and inflicting serious, permanent injuries.

(Pet. Exhibit A, Mem. Dec. 12/7/98 at 2.)[11]  There has been no suggestion that any evidence of intent to cause apprehension existed  apart from the firing of the shot and the proximity of Officer Handy and the bystanders.[12]

As the Arizona Court of Appeals explained in Petitioner's second direct appeal, from the evidence of Petitioner having fired the shot in the direction of the crowd the "jurors could permissibly infer that Johnson intended to place the bystanders in reasonable apprehension." (Pet. Exhibit D, Mem. Dec. 6/17/03 at 12 n.7.)  However, that evidence was not sufficient to allow the court to presume that the jury must have found the intent  necessary to support the aggravated assault charges:

> we cannot rule out that Johnson may have intended only to shoot Officer D and not to place Officer D or anyone else in apprehension. It cannot be presumed from the act of firing a shot at Officer D that Johnson also intended to scare Officer D or any of the bystanders. While common sense suggests that a person who shoots at one person likely knows that bystanders will be frightened by the shot, the apprehension form of assault requires proof of *intentionally* placing a person in apprehension.  *Knowingly* placing a person in apprehension

---

[11]  Respondents were encouraged to supplement the record on the evidence before the jury.  (*See* Order 3/25/10, Doc. 18 at 4 ("Here, the parties have not supplied copies of transcripts or the jury instructions given so as to permit this Court to evaluate whether the jury, particularly in light of the other related offenses on which they convicted, necessarily found the required elements to convict on Count Three notwithstanding the erroneous instruction.").)  In response, Respondents did not submit any additional transcripts.  (*See* Response, Doc. 20.)  Consequently, the undersigned must presume that the balance of the transcript would not further Respondents' arguments beyond the descriptions of the evidence in the state courts' rulings.

[12]  Indeed, on retrial on Counts 4 through 9, the prosecution was ultimately required to rely upon a transferred intent instruction to supply the requisite intent as to the bystanders.

1    is a less culpable mental state and is not sufficient for this crime.

2    (*Id.* at 12 (citations omitted, emphasis in original).)

3    <u>Grave Doubt</u> - At best then, this Court is left with an erroneous and generally

4    applicable definition of intent, rendered in response to a jury question originally directed at

5    Counts 4 through 9, and evidence which arguably could have supported a finding of intent

6    on Count 3, but did not compel such a finding.   If applied to Count 3, the erroneous

7    instruction left the jury free to sidestep the careful weighing of evidence required to find the

8    requisite subjective intent necessary to convict on Count 3, just as it had done on Counts 4

9    through 9. "The trial court's response to the jury's inquiry specifically and erroneously

10   directed them to apply the intent element only to the conduct, *i.e.* the firing of the rifle or 'the

11   act that you do.'" (Pet. Exhibit A, Mem. Dec. 12/7/98 at 19 (referencing Counts 4 though 9).)

12   Under these circumstances, the undersigned concludes that the jury's verdict was

13   substantially influenced by the erroneous instruction, and thus the error was not harmless.

14   *See O'Neal v. McAninch*, 513 U.S. 432, 435 (1995) ("Normally a record review will permit

15   a [habeas corpus] judge to make up his or her mind about the matter.  And indeed a judge has

16   an obligation to do so.")

17   Even if not so convinced, the balance between presuming that the jury relied upon the

18   specificity of their question rather than presuming that they relied upon the generality of the

19   trial court's response, "is so evenly balanced that [the undersigned would at most feel]

20   himself in virtual equipoise as to the harmlessness of the error."  *O'Neal*, 513 U.S. at 435.

21   In the face of such "grave doubt," the undersigned must "treat the error, not as if it were

22   harmless, but as if it affected the verdict." *Id.  See also Coleman v. Calderon*, 210 F.3d 1047,

23   1051 (9th Cir. 2000) ("If we are in grave doubt as to whether the error had such an effect, the

24   petitioner is entitled to the writ.").

25   **<u>Summary</u>** - Based upon the foregoing, the undersigned concludes that Petitioner was

26   denied due process when the trial court's erroneous, and not harmless,  instruction permitted

27   Petitioner to be convicted on Count 3 in his first trial without proof of the intent element of

28   the crime.

1   Accordingly, the undersigned will recommend that Petitioner be issued a writ of

2   habeas corpus directing his release from all custody as a result of his conviction on such

3   Count 3, which represents 21 years of Petitioner's 117 year combined sentence, unless within

4   90 days the State of Arizona retries and convicts him on such charge.

5

6   **B. GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL**

7   For his Ground Two for relief, Petitioner argues that his appellate counsel was

8   constitutionally ineffective under the Sixth Amendment of the United States Constitution for

9   failing to challenge a flawed "transferred intent" instruction on appeal of his conviction in

10  his third trial for aggravated assault as to the bystanders. (Petition, Doc. 1 at 27-38.)

11  Respondents contend that the PCR court determined that the instruction was correct under

12  Arizona law, and thus argue that Petitioner cannot show deficient performance in failing to

13  raise the meritless claim. (Answer, Doc. 13 at 16-17.) Petitioner replies by arguing that the

14  instruction was incorrect, a challenge would have been successful, and thus appellate counsel

15  was deficient in failing to pursue it. (Traverse, Doc. 17 at 9-18.)

16  **Ineffective Assistance Standard** - Generally, claims of ineffective assistance of

17  counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order

18  to prevail on such a claim, Petitioner must show: (1) deficient performance - counsel's

19  representation fell below the objective standard for reasonableness; and (2) prejudice - there

20  is a reasonable probability that, but for counsel's unprofessional errors, the result of the

21  proceeding would have been different. *Id.* at 687-88. Although the petitioner must prove

22  both elements, a court may reject his claim upon finding either that counsel's performance

23  was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

24  A deficient performance is one in which counsel's errors were so great he or she was

25  not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn*, 800 F.2d

26  861, 864 (9th Cir. 1986). The failure to take futile action can never be deficient

27  performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996). "The failure to raise

28  a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann*

- 22 -

1   *v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

2          **State Law Determinations** - A state court determination of state law is not subject

3   to review in a federal habeas court. *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000)

4   ("federal court is bound by the state court's interpretations of state law").  That principle

5   applies to a state court's analysis of jury instructions under state law. *See Waddington v.*

6   *Sarausad,* 129 S.Ct. 823, 832 n 5 (2009) ("The Washington Supreme Court expressly held

7   that the jury instruction correctly set forth state law, and we have repeatedly held that 'it is

8   not the province of a federal habeas court to reexamine state-court determinations on

9   state-law questions.'" ).

10         **Application** - Here, the PCR court concluded that under the state law of Arizona, the

11  transferred intent instruction "was a proper instruction."  (Pet. Exhibit F, Order 6/21/6.)[13].

12  This habeas court cannot revisit that decision. Thus, this Court must accept the PCR court's

13  conclusion that had appellate counsel raised a challenge to the transferred intent instruction,

14  that challenge would have been unsuccessful.

15         Petitioner attempts to now avoid that determination by arguing that the transferred

16  intent instruction may have been technically correct, but required augmentation "to make

17  clear the limitations on this theory of intent." (Travers Doc. 17 at 12-15.)  Petitioner argues

18  that the instruction permitted the jury to convict without finding the requisite intent by

19  implying that the jury could "transfer Petitioner's apparent intent to shoot Officer Dauer to

20  supply the intent to cause reasonable apprehension in the bystanders." (Travers, Doc. 17 at

21  13.)

22         However, the PCR Court identified three elements required by its instructions:

23              (1) intend to place some other person in reasonable apprehension of
                imminent physical injury, and (2) actually placed that other person in
24              reasonable apprehension of imminent physical injury, and (3) actually
                placed the named victim in reasonable apprehension of imminent

25

26         [13] Because the Arizona Court of Appeals and Arizona Supreme Court issued summary
27  denials of review of the PCR court's decision, this habeas court looks through to the "last
    reasoned decision," and thus reviews the PCR court's decision. *Ylst v. Nunnemaker* , 501
28  U.S. 797, 804 (1991).

physical injury.

(Pet. Exhibit F, Order 6/21/06 at 3.)  The intent with respect to the direct object was not limited to a simple intent to shoot at them.  Instead, it required an intent "to place [them] in reasonable apprehension."  (*Id.*)

Petitioner points out a series of federal cases where clarifying instructions were required, despite the fact that the instructions given were correct.  (Traverse, Doc. 17 at 15-16.) However, each of those cases were federal prosecutions, and thus did not require the federal courts to reject a state court's finding on a matter of state law.  *See United States v. Negrete-Gonzalez*, 966 F.2d 1277, 1282 (9th Cir. 1992); *United States v. Gee*, 226 F.3d 885, 895 (7th Cir. 2000); *United States v. Thomas*, 150 F.3d 743, 745 (7th Cir. 1998); *United States v. Mims,* 92 F.3d 461, 464 (7th Cir. 1996); and *United States v. Corrigan*, 548 F.3d 879, 883 (10th Cir. 1977).

Moreover, Petitioner's logic  invites this Court to presume that when the PCR court concluded the instruction was "a proper instruction", that it was evaluating the language of the instruction in a vacuum without an eye to its correctness in the context of the trial.  That would require this Court to assume that the PCR court ignored Petitioner's arguments that the disputed instruction "correctly stated the law without doing anything to limit the possibility [that the jury may have applied the instruction too broadly]."  (Resp. Exhibit B, PCR Pet. at 13.)   Instead, the PCR Court explicitly rejected such a contention, carefully evaluating the instructions and their delineation of all the elements required to be found by the jury, and concluding that the court "must presume that the jurors followed this Court's instructions."  (Pet. Exhibit F, Order 6/21/6 at 3-4.)

Thus, Petitioner fails to proffer any reason to believe that a challenge by appellate counsel would have had sufficient merit to mandate that he bring such a challenge.  Under these circumstances, the undersigned can find neither deficient performance nor prejudice, and therefore Ground Two should be denied.

## C.  GROUND THREE (GANG EVIDENCE):  PROCEDURAL DEFAULT

Respondents argue that Petitioner's Ground Three is unexhausted, now procedurally defaulted, and thus barred from habeas review.

### 1.  Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

**Proper Forum/Proceeding** - Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

Respondents argue (Answer, Doc. 13 at 15) that presentation to the Arizona Supreme Court (not just the Arizona Court of Appeals) is required for exhaustion, citing *Baldwin v. v. Reese,* 541 U.S. 27, 30–33 (1999).  The Ninth Circuit's subsequent reliance on *Swoopes* in *Castillo*, notwithstanding *Baldwin*, dispels this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*.

**Fair Presentment** - To result in exhaustion, claims must not only be presented in the

proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

**2.  Application to Petitioner's Ground Three**

In his third ground for relief, Petitioner challenges the admission of the gang related evidence in his third trial, arguing that it was irrelevant and prejudicial, and therefore  its admission was a denial of due process.  (Petition, Doc. 1 at 39-43.)  Petitioner argues that this claim was presented to the Arizona Court of Appeals and the Arizona Supreme Court in his third direct appeal.   Petitioner interweaves in his arguments the assertion that he presented his claim "at every level of the State Court."  (Traverse, Doc. 17 at 22; *see also id.* at 21, 23.)

In particular, Petitioner argues that the claim was fairly presented when he argued "that the wrongful admission of this irrelevant and inflammatory evidence was harmful because it cannot be established beyond a reasonable doubt that it did not contribute to the verdict, citing the federal standard set forth in *Chapman v. California*, in support." (Traverse, Doc. 17 at 20-21 (citing Resp. Exhibit C, Opening Brief at 19).)

**Not Presented to Court of Appeals** - To be sure, Petitioner did argue the facts of this claim in his third direct appeal.  However, while the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam).

Petitioner concedes that he did not "pronounce the words 'due process' in the lower appellate court."   (Traverse, Doc. 17 at 23.)   Moreover, a review of Petitioner's Opening

Brief reveals no reference to the Due Process guarantees of the U.S. Constitution. Petitioner cited no provision of the United States Constitution, and the only reference to any constitutional provision was to the Arizona State Constitution for purposes of establishing jurisdiction over the appeal. (Resp. Exhibit C, Opening Brief at 3.)

It is true that a state court may be found to have been fairly apprised of a federal claim by the citation of relevant federal authorities. Here, however, the only citation of federal authority was *Chapman v. California*, 386 U.S. 18 (1967) However, Petitioner only indirectly cited this case as having been the source of a quotation by the state courts:

> This error requires reversal because "upon an examination of the entire record, it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict." *State v. Serrano*, 17 Ariz. App. 473, 498 P.2d 547 (App. 1972), quoting *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967).

(Resp. Exhibit C, Opening Brief at 19.)

The state case cited by Petitioner, *Serrano*, was not a federal due process case, but instead turned upon a determination whether evidence improperly admitted under state law had been prejudicial and thus required reversal. The Arizona court drew upon *Chapman* only for a standard for determining whether the improperly admitted evidence required reversal. However, that did not render *Serrano* a federal constitutional case. Indeed, in *State v. Fulimante*, 161, Ariz. 237, 778 P.2d 602 (1988), the Arizona Supreme Court acknowledged that the state courts had simply co-opted the harmless error standard from *Chapman*, but varied from the federal courts in its formulation and application. *Id.* at 245, 778 P.2d at 610.

Moreover, *Chapman* itself was not founded upon a determination that unfairly prejudicial evidence must be excluded. Nor did it even hold that improperly admitted evidence which was unfairly prejudicial resulted in a due process violation. Rather, *Chapman* was limited to resolving when errors which were themselves a constitutional violation (in that case, instructions and argument that the defendants' invocation of their right to remain silent was evidence of guilt) required reversal. The issues identified by the Court were "whether there can ever be harmless constitutional error and whether the error here was

1    harmless." 386 U.S. at 20.  Indeed, the Court first had to resolve whether federal or state law

2    governed the issue, and opined that "application of a state harmless-error rule is, of course,

3    a state question where it involves only errors of state procedure or state law." *Id.* at 21.

4        Thus, Petitioner's citation to *Serrano*, and his indirect citation to *Chapman* would not

5    serve to identify a claim that the admission of the gang related evidence was a violation of

6    due process.  Indeed, the state law nature of Petitioner's claim was plainly stated in the

7    conclusion of his Opening Brief: "The Trial Court abused its discretion by admitting

8    evidence of prior contacts with members of the police gang squad, in violation of Rule

9    401,402,403, and 404 of the Arizona Rules of Evidence." (Resp. Exhibit C at 21.)

10       **Presentation to Arizona Supreme Court** - Petitioner did fairly present his due

11   process claim in his Petition for Review to the Arizona Supreme Court.  He argued that the

12   admission of the gang related evidence was unfairly prejudicial and that it impinged upon his

13   presumption of innocence, that it was a violation of his federal due process guarantee. (Resp.

14   Exhibit D, Pet. Rev. at 10-11.)

15       However, Petitioner presented his claim for the first time to the Arizona Supreme

16   Court, skipping the intermediate court.  Arizona Rule of Criminal Procedure 31.19(c)(1)

17   limits review to issues presented to the Arizona Court of Appeals.  Therefore, Respondents

18   argue, Petitioner's presentation of this claim for the first time to the Arizona Supreme Court

19   was not fair presentation.[14]

20   _____

21       [14] Respondents also argue that Petitioner's due process argument was too vague and
     generalized to result in fair presentation. (Answer, Doc. 13 at 9.) However, the Petition for
22   Review plainly laid out a due process challenge to the admission of unfairly prejudicial
     evidence, arguing the evidence was incompetent and resulted in an unfair fact finding
23   process. "Although evidence questions are questions of state law, improper admission of
     evidence can amount to a due process violation if it 'is clearly prejudicial and 'rendered the
24   trial fundamentally unfair.' ' " *Valerio v. Crawford,* 306 F.3d 742, 775 (9th Cir. 2002).

25       It is true that Petitioner relied upon *Estelle v. Williams*, 425 U.S. 501 (1976), which
     involved a defendant's presentation before the jury in prison garb, rather than any formally
26   introduced evidence.  However, the essence of *Estelle* was the recognition that due process
     prohibits procedures which "undermine the fairness of the fact-finding process . . . [or dilute]
27   the principle that guilt is to be established by probative evidence and beyond a reasonable
     doubt."  425 U.S. at 503.  Although *Estelle* may not have been factually on point, the

28

In *Castille v. Peoples*, 489 U.S. 346, 351 (1989), the Supreme Court was called on to decide "whether the presentation of claims to a State's highest court on discretionary review, without more, satisfies the exhaustion requirements of 28 U.S.C. § 2254." *Id.* at 349. After noting that the petitioner had raised only state law claims to the intermediate state appellate court, the Supreme Court held that "where the [federal] claim has been presented for the first and only time in a procedural con text in which its merits will not be considered unless there are special and important reasons ... [r]aising the claim in such a fashion does not ... constitute fair presentation." *Id.* at 351 (internal quotation marks and citations omitted). Petitioner offers nothing to suggest that there is anything which would make this distinguishable from *Castille*.

To be sure, Petitioner does argue that there are reasons to distinguish the cases relied upon by Respondents in making their argument.  Petitioner distinguishes *Roentgen v. Copeland*, 33 F.3d 36 (9th Cir. 1994) on the basis that the petitioner there had only submitted his claims in a state habeas proceeding after the conclusion of his direct appeals and post-conviction proceedings. (Traverse, Doc. 17 at 20-21.)  However, *Roentgen* effects no limits on the holding in *Castille*.  In fact, it is distinguishable to the extent that it involved not a skipping of an intermediate court, but a presentation in a separate review proceeding, whilst review was designated by the Arizona Rules to be brought through normal review processes such as direct appeal or post-conviction remedies under Rule 32.  Here, Petitioner's failure was not presentation in an extraordinary proceeding, but skipping an intermediate court in the same proceedings.

Petitioner distinguishes *Gunter v. Mahoney*, 291 F.3d 74 (1st Cir. 2002), on the basis that there was no explicit holding in this case that his claim was procedurally defaulted by failure to raise it earlier.  (Traverse, Doc. 17 at 21-22.)  However, as made clear in *Casey v. Moore*, this Court is not permitted to find a fair presentation by the absence of clear reliance

essential nature of the due process protection, *i.e.* prejudice to a fair fact-fainting process, is the same as that relied upon in evaluating the formal admission of evidence.

on a procedural default . It is true that there is a presumption from such absence, the *Harris presumption*, applicable when determining whether a post-card denial was on the merits or on a procedural default. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). However, that presumption is not applicable in cases such as *Casey* and here, where the question is not whether a procedural default was applied, but simply whether the claim was fairly presented. *See Casey*, 386 F3d at 918, n. 23. "The question in Casey's case is about fair presentation, not about divining the reasons behind the state supreme court's rejection without comment of Casey's claims." *Id.* Thus, the lack of a clear reliance on procedural default is not determinative of whether Petitioner's novel presentation to the Arizona Supreme Court was a fair presentation.

Petitioner distinguishes *State v. Sepahi,* 206 Ariz. 321, 78 P.3d 732 (2003), on the basis that the defendant in that case attempted to bring a claim for the first time in a supplemental brief before the Arizona Supreme Court, whereas Petitioner challenged the admission of the gang evidence in the Court of Appeals, and argued it in his Petition to the Arizona Supreme Court. (Traverse, Doc. 17 at 21.) However, the Arizona court's reference in *Sepahi* to presentation in the supplemental brief was not the determinative factor, rather the court concluded that the " issue was not raised either in the superior court or the court of appeals, and therefore was not preserved for our review." *Id.* at 324, 78 P.2d 736, n.3. In so finding, the *Sepahi* court cited *State v. Jones*, 185 Ariz. 471, 480, 917 P.2d 200, 209 (1996), where the Court held that "[a]n issue not raised below is waived absent fundamental error." Petitioner offers no basis to avoid the holding of *Jones*.

Petitioner similarly distinguishes *State v. Box*, 205 Ariz. 492, 72 P.3d 623 (Ariz. App. 2003) (claim only presented at oral argument) and *State v. Kemp*, 185 Ariz. 52, 912 P.3d 1281 (1996) (claim only presented in appendix) on the basis that he asserted his federal due process claim in the body of his petition for review. (Traverse Doc. 17 at 22.) In neither of these cases, however, was the issue whether skipping a lower court prevented review. Thus, these cases are not germane to this Court's determination of whether presentation for the first time to the Arizona Supreme Court was fair presentation, and distinguishing them does not

1   further Petitioner's case.

2         Finally, Petitioner distinguishes *Gray v. Netherland*, 518 U.S. 152 (1996) on the basis

3   that Petitioner made his federal claim clear.  However, *Gray* did not concern a failure to

4   present to an intermediate court, and distinguishing it does not further Petitioner's case.

5         Finding no basis to distinguish *Castille*, the undersigned concludes that Petitioner's

6   presentation of his federal due process claim for the first time  to the Arizona Supreme Court

7   was not fair presentation, and did not exhaust his state remedies.

8

9   **.3.  Procedural Default**

10        Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*,

11  929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly

12  exhaust his available administrative or judicial remedies, and those remedies are now no

13  longer available because of some procedural bar, the petitioner has "procedurally defaulted"

14  and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a

15  procedurally barred or procedurally defaulted habeas claim is generally proper absent a

16  "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11

17  (1984).

18        Respondents argue that Petitioner may no longer present his unexhausted claims to

19  the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim.

20  Proc. 32.2(a), which precludes the presentation of claims (with some exceptions) that could

21  have been raised in an earlier appeal or PCR proceeding.  (Answer, Doc. 13 at 9-10.)

22  Petitioner does not oppose that conclusion, nor does he assert that Rule 32.2(a) is not an

23  independent and adequate state ground to bar habeas review.

24        The undersigned concludes that Respondents' argument is persuasive.  Accordingly,

25  the undersigned finds that Petitioner's Ground Three is not merely unexhausted, but is now

26  procedurally defaulted.

27        If the habeas petitioner has procedurally defaulted on a claim, he may not obtain

28  federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to

excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984). Failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) Here, Petitioner has offered no explanation to excuse his failure to exhaust. The undersigned finds none. Nor has Petitioner made any assertion that he is actually innocent.

Accordingly, Petitioner's unexhausted Ground Three concerning the admission of gang related evidence  must be dismissed with prejudice.

## D.  SUMMARY

In Ground 1, Petitioner has shown a denial of due process in his conviction on Count 3 in his first trial a result of the erroneous jury instruction on intent. In Ground 2, Petitioner fails to show the requisite deficient performance and prejudice to show ineffective assistance of appellate counsel.  Petitioner's federal claims in Ground 3 (gang evidence) are unexhausted and now procedurally defaulted.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner on two of his three grounds for relief.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits as to Ground 2 and on procedural grounds as to Ground 3.

With regard to the merits determination on Ground 2 (ineffective assistance), under the reasoning set forth herein,  the underlying constitutional claims are plainly without merit.

As to the procedural ruling on Ground 3 (gang evidence),under the reasoning set forth herein,  the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

Accordingly, as to both grounds, the certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that as to Ground One (Jury Instruction), the Petitioner's Petition for Writ of Habeas Corpus, filed  November 24, 2008  (Doc. 1) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that this Court's Writ of Habeas Corpus be issued directing Petitioner's release from all custody as a result of his conviction in his first trial on Count 3 (aggravated assault as to Officer Handy), unless within 90 days the State of Arizona retries and convicts him on such charge.

**IT IS THEREFORE RECOMMENDED** that  as  to  Ground  Two  (Ineffective

1    Assistance), the Petitioner's Petition for Writ of Habeas Corpus, filed  November 24, 2008

2    (Doc. 1) be **DENIED**.

3          **IT IS FURTHER RECOMMENDED** that as to Ground Three (Gang Evidence), the

4    Petitioner's Petition for Writ of Habeas Corpus, filed  November 24, 2008  (Doc. 1) be

5    **DISMISSED WITH PREJUDICE**.

6          **IT IS FURTHER RECOMMENDED** that to the extent this Report &

7    Recommendation is adopted, that a certificate of appealability **BE DENIED**.

8

9                              **V. EFFECT OF RECOMMENDATION**

10          This recommendation is not an order that is immediately appealable to the Ninth

11   Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

12   *Appellate Procedure*, should not be filed until entry of the district court's judgment.

13          However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

14   have fourteen (14) days from the date of service of a copy of this recommendation within

15   which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

16   Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to

17   file a response to the objections.  Failure to timely file objections to any findings or

18   recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de*

19   *novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

20   Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the

21   findings of fact in an order or judgment entered pursuant to the recommendation of the

22   Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

23

24   DATED: December 23, 2010                    _____

25                                                           JAY R. IRWIN
                                                           United States Magistrate Judge
26

27

28