UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| BENJAMIN LLOYD JOHNSON, | ) ) | |
| Petitioner, | ) ) | 2:08-cv-02167 JWS |
| vs. | ) ) | ORDER AND OPINION |
| IVAN BARTOS, *et al.*, | ) ) | [Re: Petition at Docket 1] |
| Respondents. | ) ) | |

### I. MATTER PRESENTED

At docket 1, petitioner Benjamin Lloyd Johnson ("petitioner" or "Johnson") seeks a writ of habeas corpus. Respondents' answer is at docket 13. Petitioner's traverse is at docket 17. At docket 21, Magistrate Judge Jay R. Irwin filed a report in which he recommended that Johnson's petition be granted in part, denied in part, and dismissed in part, and that the court deny a certificate of appealability. Johnson filed objections at docket 22. Respondents objected in part at docket 23, to which Johnson replied at docket 25.

## II.  BACKGROUND

On November 12, 1994, Phoenix police officers Jeffrey Dauer and Robert Handy made a traffic stop in a residential neighborhood.  While the officers were speaking with the occupants of the vehicle, six individuals gathered at the site of the traffic stop. Johnson, who was positioned in a yard 325 feet away, shot Officer Dauer in the leg with a scoped, 30.06 caliber rifle.

Johnson was indicted on one count of attempted murder (Count 1), two counts of aggravated assault with respect to the police officers (Counts 2 and 3), six counts of aggravated assault as to the bystanders (Counts 4 through 9), and one count of criminal trespass (Count 10). The indictment alleged that all offenses but two were "dangerous felonies" qualifying Johnson for enhanced punishment.

### A. Johnson's First Trial and Appeal

At petitioner's first trial, the court gave a model intent instruction defining "intentionally" or "with intent to" to mean an "objective . . . to cause that result or engage in that conduct."[1]  The court instructed the jury on dangerous offenses as follows:  "An offense is a dangerous offense if it involved the intentional or knowing infliction of serious physical injury or the use or exhibit of a deadly weapon or dangerous instrument."[2]  The court instructed the jury that aggravated assault as to Officer Handy required proof of the following:

---

[1] Doc. 1-1 at 17.

[2] Doc. 13-2 at 92.

> 1. The defendant committed an assault, which requires proof that:
> The defendant intentionally put another person, that the defendant knew
> or had reason to know was a police officer, in reasonable apprehension of
> immediate physical injury; and
> 2. The assault was aggravated by the following factor:
> The defendant used a deadly weapon.[3]

As to aggravated assault on the bystanders, the court's instruction was the same except it omitted the requirement that the defendant knew or had reason to know that the victim was a police officer.[4]

During deliberations, the jury sent the trial judge a note stating as follows:

> We are confused on the word <u>intentionally</u> as it refers to counts 4 through
> 9 - - is intent to use a weapon the same as intent to do bodily harm.
> Please expand on Doc. 3 of page 3.[5]

The trial court's response was that "<u>intentionally</u> means intent to do the act that you do."[6]

Johnson was convicted on all counts except the trespass count, which was dismissed. He was sentenced to 132 years in prison, which included consecutive 21-year terms on Counts 2 and 3.

On appeal, the Arizona Court of Appeals reversed the convictions on Counts 1 and 4 through 9. In Arizona, to be convicted of aggravated assault, "a defendant must intend both conduct (using a deadly weapon or dangerous instrument) *and* a result

---

[3]*Id.* at 93.

[4]*Id.* at 94.

[5]Doc. 1-1 at 19.

[6]*Id.*

(placing another person in reasonable apprehension of imminent physical injury)."[7] The court found that the trial court's response to the jury's note was erroneous because it "directed [the jury] to apply the intent element only to the conduct."[8] The Arizona Court of Appeals emphasized that the jury's note was explicitly directed at Counts 4 through 9 and that there was "nothing in the record to suggest that the jury was confused as to the intent element of Counts [1 through 3], and . . . no reason to assume that the [trial] court's response affected the verdicts on those counts."[9] Johnson's sentence on Counts 1 and 4 through 9 was vacated; his sentence for Counts 2 and 3 remained. The Arizona Supreme Court denied review.

## B. Johnson's Second Trial and Appeal

On remand, the state dismissed the attempted murder charge and Johnson was retried on the six aggravated assault counts pertaining to the bystanders. The trial court instructed the jury on the doctrine of transferred intent and permitted the state "to argue that Johnson's intent to shoot the police officer could be transferred to serve as the intent" to place another in reasonable apprehension of imminent physical injury.[10] Johnson was convicted on five of the six aggravated assault counts. On appeal, the Arizona Court of Appeals found that the trial court erred because "the intent to shoot and cause injury or death cannot be transferred to provide the intent to place the

---

[7]*Id.* at 20

[8]*Id.*

[9]*Id.* at 21.

[10]Doc. 1-2 at 7.

bystanders in reasonable apprehension of imminent physical injury."[11] The appellate court reversed Johnson's convictions on the five counts of aggravated assault on the bystanders.

### C. Johnson's Third Trial and Appeal

Johnson was retried on five of the six counts of aggravated assault on the bystanders. The trial court admitted evidence that Officers Dauer and Handy were members of gang enforcement units and permitted their testimony "that they had encountered Johnson in the past and that Johnson had not fled from them on those occasions."[12] Petitioner objected to that testimony on the ground that it was unfairly prejudicial.

> The trial court instructed the jury on aggravated assault counts as follows: The crime of Aggravated Assault requires proof of the following three things: (1) The defendant's actions placed a person in reasonable apprehension of imminent physical injury; *and* (2) the defendant intended to place that person in reasonable apprehension of imminent physical injury, *and* (3) the defendant used a deadly weapon.[13]

After an exchange during which Johnson's counsel "expressed concern about [the trial court's] transferred intent instruction," but could not draft an acceptable alternative,[14] the court instructed the jury as follows:

> Intended to place a certain person in reasonable apprehension of imminent physical injury is an element of the offense of each separate count. If the defendant placed a certain person in reasonable apprehension of imminent physical injury, but the defendant did not intend

---

[11] *Id.*

[12] Doc. 1-3 at 5.

[13] *Id.* at 17.

[14] *Id.* at 15–16.

>to place that certain person in reasonable apprehension of imminent physical injury, the element of intended to place that certain person in reasonable apprehension of imminent physical injury is established if (1) the defendant's actions also placed a different person in reasonable apprehension of imminent physical injury, *and* (2) the defendant intended to place that different person in reasonable apprehension of imminent physical injury.[15]

Johnson was convicted on all five counts and sentenced to consecutive 15-year sentences on each.

On appeal, Johnson challenged the trial court's failure "to exclude testimony that he had previously [not fled] from members of the Phoenix Police gang unit."[16] The Arizona Court of Appeals found that the evidence was relevant and not unfairly prejudicial.[17] The Arizona Supreme Court denied review of Johnson's modified argument that admission of that evidence violated his federal due process rights.

### D. Post-Conviction Proceedings

In his Rule 32 post-conviction relief ("PCR") proceeding, Johnson argued that the transferred intent instruction given at his third trial was erroneous and that counsel on his third appeal was ineffective for failing to challenge that instruction. The PCR court determined that the instruction did not constitute fundamental error and that the claim was precluded anyway because Johnson did not raise it on direct appeal.[18] The PCR court rejected Johnson's ineffective assistance of counsel claim, finding that Johnson failed to demonstrate deficient performance–"[b]ecause there was a reasonable basis

---

[15]*Id.*

[16]Doc. 1-3 at 3.

[17]*Id.* at 5–10.

[18]*Id.* at 16.

for not raising the issue on appeal"–or prejudice–"because the instruction [given] was a proper instruction."[19] The Arizona Court of Appeals and the Arizona Supreme Court both denied review.

## F. Federal Habeas Proceedings

Johnson filed the present petition for a writ of habeas corpus on November 24, 2008. Johnson has stated three grounds for relief. First, Johnson argues that he "was denied his constitutional right to due process of law . . . when the trial court [in his first trial] erroneously instructed the jury on the mental element of aggravated assault"[20] ("Ground One"). Second, Johnson argues that his counsel on his third appeal was constitutionally ineffective in violation of the Sixth Amendment "for failing to challenge [the] transferred intent instruction on appeal [even though] the error had been preserved at trial"[21] ("Ground Two"). Finally, Johnson argues that he "was denied due process of law when the trial court admitted, at [his] third trial, prejudicial and irrelevant evidence against him"[22] ("Ground Three").

Magistrate Judge Irwin has recommended granting Johnson's petition with respect to Ground One, denying the petition with respect to Ground Two, and dismissing the petition with prejudice with respect to Ground Three.

---

[19]*Id.* at 16–17.

[20]Doc. 1 at 11.

[21]*Id.* at 12.

[22]*Id.*

### III.  STANDARD OF REVIEW

The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."[23]  When reviewing a magistrate judge's report and recommendation in a case such as this one, the district court conducts *de novo* review of all conclusions of law,[24] and any findings of fact to which objections have been made.[25]  Uncontested findings of fact are reviewed for clear error.[26]

### IV.  DISCUSSION

**A.  Ground One - Denial of Due Process Pertaining to the Intent Instruction Given at Petitioner's First Trial**

Respondents object to the report and recommendation with respect to Ground One of Johnson's petition.

**1. Exclusion of Count 3 from the Jury's Question**

Respondents do not object to the reported finding that the state appellate court applied a standard contrary to federal law when determining the harmfulness of the state trial court's erroneous instruction from Johnson's first trial.  The court placed the burden on the defendant to show that the erroneous instruction was harmful, whereas the court should have assumed that the error was harmful and put the burden on the

---

[23] 28 U.S.C. § 636(b)(1).

[24] *Barilla v. Ervin,* 886 F.2d 1514, 1518 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir. 1996).

[25] 28 U.S.C. § 636(b)(1).

[26] *Taberer v. Armstrong World Industries, Inc.,* 954 F.2d 888, 906 (3d Cir. 1992).

government to show otherwise.[27]  Respondents argue that, nevertheless, grave doubt does not exist as to whether that constitutional error substantially influenced the verdict.[28]

Respondents maintain that the jury's note explicitly disclaimed confusion as to the definition of "intent" pertaining to Count 3.[29]  This objection reflects a misunderstanding of the magistrate judge's rationale–the jury could not have been comfortable with the meaning of "intentionally" as it pertained to Count 3, but confused as to its meaning with respect to Counts 4 through 9, because its meaning did not vary.  As Magistrate Judge Irwin wrote, "[t]here was no reason for the distinction . . . in the jury's question" to begin with.[30]

Even if the jury's "true confusion"[31] related to designation of Counts 4 through 9 as dangerous offenses, the point is that the instruction "was not limited to a specific count or issue."[32]  Respondents' position that the jury's intent question "does not impugn the jury's verdict on Count 3 in any way"[33] ignores the actual circumstance that "the trial

---

[27] *Chapman v. California*, 386 U.S. 18 (1967).

[28] *See Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir. 2004).

[29] Doc. 23 at 4.

[30] Doc. 21 at 15.

[31] Doc. 23 at 5.

[32] Doc. 21 at 17.

[33] Doc. 23 at 5.

court [essentially] rewrote its general definition of intent, which was applicable to all counts, including Count 3."[34]

### 2. Factual Distinctions

Respondents object on the ground that the report and recommendation "fails to accord proper weight to the factual distinctions between Counts 3 and Counts 4–9."[35] The thrust of respondents' contention is that the jury may have seized the officers' conspicuousness as a basis to find intent to cause reasonable apprehension of imminent physical harm to both officers. The report adequately addressed this issue. "If the jury followed the instructions they were left with . . . then they could have convicted [p]etitioner without having to find any evidence of the intent to create an apprehension."[36]

### 3. Challenging Intent at Trial

Respondents' final objection is that petitioner "did not meaningfully challenge the lack-of-intent issue at trial."[37] Respondents' petition is contradicted by the record.[38] Counsel's decision not "to spend much time talking about" intent during closing argument does not mean that the issue was not raised.[39]

---

[34] Doc. 21 at 17.

[35] Doc. 23 at 5.

[36] Doc. 21 at 18.

[37] Doc. 23 at 7.

[38] *See* doc. 13-2 at 41.

[39] *Id.*

**B. Ground Two - Ineffective Assistance of Counsel on Petitioner's Third Appeal**

Petitioner objects to the recommendation that relief on Ground Two of his petition be denied. Magistrate Judge Irwin found that failure to challenge on appeal the transferred intent instruction given at Johnson's third trial did not constitute deficient performance by Johnson's counsel because the PCR court determined that the instruction accurately stated Arizona law. Petitioner argues that the basis of his challenge is not that the instruction was an incorrect statement of the law, but rather, that the trial court failed to modify the instruction to clarify the concept of transferred intent. Petitioner's argument fails because whether the alleged error was appellate counsel's failure to challenge the instruction as an incorrect statement of the law or as needing clarification, petitioner is unable to show deficient performance or prejudice. The PCR court's determination that the instruction was correct subsumes either basis.

Petitioner objects to the "implicit finding" that the instruction was clear and therefore did not require clarification.[40] There was no such implicit finding. As discussed in the report and recommendation, the PCR court's determination was made in context and not in a vacuum.[41] The PCR court, in determining that the instruction was correct necessarily determined that the instruction was correct *as written* and that further clarification was not necessary.[42]

---

[40] Doc. 22 at 8.

[41] *See* doc. 21 at 24.

[42] *See* doc. 1-3 at 17–18.

Petitioner argues that the "instruction did nothing to prevent jurors from transforming petitioner's intent to shoot Officer Dauer, or even petitioner's awareness that such an action might cause alarm in others, into an intention to cause fear and apprehension" in the bystanders.[43]  Although it is unnecessary in light of the PCR court's determination to examine the substance of the instruction, the court notes that petitioner's fear is overstated.  The instruction encompassed only the "inten[t] to place a certain person in reasonable apprehension of imminent physical injury."[44]  Each step of the permissible transfer was spelled out to involve substitution of intent to place another in reasonable apprehension of imminent physical injury for intent to place the victim in reasonable apprehension of imminent physical injury.  There was no mention of intent to do another act or cause another result.  Therefore, the force of petitioner's contention that the instruction relieved the prosecution of its burden on the specific intent element of aggravated assault is undermined.

Petitioner also objects to the finding that a series of circuit court cases cited by petitioner are distinguishable because they involved federal prosecutions and therefore did not involve deference to state interpretations of state law.  Petitioner maintains that, in the aggregate, those cases establish a broad principle requiring trial courts to give clarifying instructions in certain circumstances.[45]  However, all but one of the cases cited by petitioner involve not just federal prosecutions, but federal prosecutions for

---

[43]Doc. 22 at 9.

[44]Doc. 1-3 at 17.

[45]Doc. 22 at 10.

conspiracy.[46] To the extent the other reflects a broader principle, it is limited to "the importance of avoiding confusion as to the burden of proof when an affirmative defense such as entrapment, insanity, or self-defense is asserted."[47]

Even assuming the cases cited stand for the proposition that petitioner reads into them, unlike the situations described in those cases, here it is not altogether clear that a "clarifying" instruction would have been beneficial. Even if the court were to subscribe to petitioner's view of the complexities of the transferred intent doctrine, attempts to clarify could have compounded any potential confusion. As given, the instructions referred solely to the requisite intent to place another in reasonable apprehension of imminent physical harm. A clarification that, for instance, intent to cause bodily harm could not be substituted for intent to cause a reasonable apprehension would have required the court to reference an intent that was irrelevant to the charge.

Finally, petitioner objects on the ground that the report did not analyze the instruction in appropriate context because the prosecution's theory was founded on "the concept of imputing to petitioner an intent with respect to [bystanders] who were not targeted."[48] Petitioner's objection is to the transferred intent doctrine. Whatever the extreme policy implications of the transferred intent doctrine, it is embedded in the justice system, and it is the law in Arizona.[49]

---

[46] *See United States v. Gee*, 226 F.3d 885 (7th Cir. 2000); *United States v. Thomas*, 150 F.3d 743 (7th Cir. 1998); *United States v. Mims*, 92 F.3d 461 (7th Cir. 1996); *United States v. Negrete-Gonzales*, 966 F.2d 1277 (9th Cir. 1992).

[47] *United States v. Corrigan*, 548 F.2d 879, 881 (10th Cir. 1977).

[48] Doc. 22 at 11.

[49] A.R.S. § 13-203(B).

**C.  Ground Three - Denial of Due Process Based on Evidence Admitted at Petitioner's Third Trial**

Neither party objects to the report's recommendation with respect to Ground Three.  Section 2254 of Title 28 requires that a state prisoner seeking a writ of habeas corpus exhaust all available state remedies.[50]  Arizona remedies as to federal claims are exhausted if the claims are raised on direct appeal or in a petition for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure.[51]  The claims must be "fairly presented to the state courts."[52]  However, "where the [federal] claim has been presented for the first and only time in a procedural context in which its merits will not be considered" it has not been fairly presented.[53]  Petitioner presented his evidentiary due process claim for the first time in his petition to the Arizona Supreme Court after his third trial.  Because he did not raise the claim before the Arizona Court of Appeals, it was not preserved for review.[54]  It was therefore presented to the Arizona Supreme Court in a procedural context where its merits would not be considered, and petitioner did not exhaust available state remedies.

The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the

---

[50] *See* 28 U.S.C. § 2254(b), (c).

[51] *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

[52] *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

[53] *Id.*

[54] *See State v. Jones*, 917 P.2d 200, 209 (Ariz. 1996).

prisoner had failed to meet a state procedural requirement."[55] Such claims are procedurally defaulted.[56] Because Johnson has not shown "cause and prejudice" or maintained actual innocence, dismissal with prejudice is appropriate.[57]

**D. Certificate of Appealability**

Because reasonable jurists would not find the denial of Johnson's ineffective assistance of counsel argument debatable or wrong, a certificate of appealability is properly denied with respect to Ground Two.[58] Because reasonable jurists "would [not] find it debatable whether the . . . court was correct in its procedural ruling" with respect to Ground Three, a certificate of appealability is properly denied as to that ground.[59]

## V.  CONCLUSION

For the foregoing reasons, Magistrate Judge Irwin's recommended findings and conclusions are **ADOPTED.**  Johnson's petition is **GRANTED** as to Ground One and a writ of habeas corpus shall be issued directing that Johnson shall be released from custody with respect to his conviction of Count 3, Aggravated Assault upon Officer Handy, at his first trial.  Johnson will remain in custody on his other convictions. Johnson's petition is **DENIED** as to Ground Two.  With respect to Ground Three, Johnson's petition is **DISMISSED** with prejudice.  A certificate of appealability will not be issued by this court.  Johnson may apply to the Court of Appeals for a certificate of

---

[55]*Coleman v. Thompson*, 501 U.S. 722, 729–30, 731 (1991).

[56]*Id.* at 731–32.

[57]*See Reed v. Ross*, 468 U.S. 1, 11 (1984); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

[58]*See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[59]*Id.*

appealability pursuant to Rule 22(b)(1) of the Federal Rules of Appellate Procedure if he wishes to take an appeal from this decision.

DATED this 9th day of March 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE